Evan J. Smith
Marc L. Ackerman
BRODSKY & SMITH
Two Bala Plaza
Suite 805
Bala Cynwyd, PA 19004
Telephone:     610-667-6200
Facsimile:     610-667-9029
esmith@brodskysmith.com
mackerman@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX GOMEZ,<br><br>                         Plaintiff,<br><br>              vs.<br><br>STONEMOR INC., ANDREW AXELROD, DAVID MILLER, JOSEPH M. REDLING, PATRICIA WELLENBACH, SPENCER E. GOLDENBERG, STEPHEN NEGROTTI, and KEVIN PATRICK,<br><br>                         Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Alex Gomez ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to his, which are alleged upon personal knowledge, as follows:

**<u>SUMMARY OF THE ACTION</u>**

1.      Plaintiff brings this stockholder action against StoneMor Inc. ("StoneMor" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

- 1 -

to sell the Company to Axar Cemetery Parent Corp. ("Parent"), an affiliate of Axar Capital Management, LP, through merger vehicle Axar Cemetery Merger Corp. ("Merger Sub" and collectively with Parent, "Axar") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a May 25, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of StoneMor's common stock will be converted into the right to receive $3.50 in cash. As a result of the consummation of the Proposed Transaction, StoneMor would become a wholly owned subsidiary of Axar.

3.     Thereafter, on August 5, 2022, StoneMor filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.     Significantly, the Proposed Transaction is a foregone conclusion, with Parent owning a 74.6% of the outstanding common shares and Company insiders collectively owning another 2.8%. Common shareholders such as Plaintiff are left with no recourse.

6.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for StoneMor, provided by StoneMor management to the Board and the Board's financial advisor Kroll, LLC ("Duff & Phelps") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Duff & Phelps, if any, and provide to the Company and the Board.

7.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## PARTIES

8.     Plaintiff is a citizen of New Jersey and, at all times relevant hereto, has been a StoneMor stockholder.

9.     Defendant StoneMor Inc., owns and operates cemeteries and funeral homes in the United States. StoneMor is incorporated in Delaware and has its principal place of business at 3331 Street Road, Suite 200 Bensalem, Pennsylvania. Shares of StoneMor common stock are traded on the New York Stock Exchange under the symbol "STON."

10.     Defendant Andrew Axelrod ("Axelrod") has been a Director of the Company at all relevant times.

11.     Defendant Joseph M. Redling ("Redling") has been a director of the Company at all relevant times. Redling also serves as the Company's Chief Executive Officer ("CEO") and President.

12.     Defendant David Miller ("Miller") has been a director of the Company at all relevant times.

13.     Defendant Patrick Wellenbach ("Wellenbach") has been a director of the Company at all relevant times.

14.     Defendant Spencer E. Goldenberg ("Goldenberg") has been a director of the Company at all relevant times.

15.     Defendant Stephen Negrotti ("Negrotti") has been a director of the Company at all relevant times.

16.     Defendant Kevin Patrick ("Patrick") has been a director of the Company at all relevant times.

17.     Defendants identified in ¶¶ 10-16 are collectively referred to as the "Individual Defendants."

18.     Non-Party Axar is a privately held investment fund.

19.     Non-Party Merger Sub is a wholly owned subsidiary of Axar created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to

confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its principal offices within the district.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

23.     StoneMor Inc. owns and operates cemeteries and funeral homes in the United States. The company operates in two segments, Cemetery Operations and Funeral Home Operations. The Cemetery Operations segment provides cemetery property interment rights, such as burial lots, lawn and mausoleum crypts, and cremation niches; cemetery merchandise comprising burial vaults, caskets, grave markers, and memorials; and cemetery services, which include opening and closing, cremation, and cemetery merchandise installation services. The Funeral Home Operations segment offers caskets and other funeral related items; and funeral home services, such as family consultation, the removal and preparation of remains, insurance products, and the use of funeral home facilities for visitation and memorial services. As of March 30, 2022, it owned and operated 304 cemeteries and 72 funeral homes in 24 states and Puerto Rico. The Company was incorporated in 2004 and is headquartered in Bensalem, Pennsylvania.

24.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the March 30, 2022 press release announcing its 2022 Q4 and year end financial results, the Company reported 79.3 million compared to $74.9 million in in the fourth quarter in the prior year.

25.    Speaking on the positive results, CEO Defendant Redling said, "2021 was a remarkable year for our team, as we continued to weather the impacts of COVID-19, while executing at a high-level in the continued implementation of our strategies and initiatives. We continued to grow our sales and revenues, with top-line revenue growth of 15.5% for the year ended December 31, 2021 compared to the year ended December 31, 2020 and we have driven a $30.3 million improvement in our adjusted EBITDA year-over-year."

26.    The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by StoneMor.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

27.    Despite this upward trajectory, the Individual Defendants have caused StoneMor to enter into the Proposed Transaction without providing requisite information to StoneMor stockholders such as Plaintiff.

***The Flawed Sales Process***

28.    As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     Additionally, the Proposed Transaction is a foregone conclusion, with Parent owning a 74.6% of the outstanding common shares and Company insiders collectively owning another 2.8%. Common shareholders such as Plaintiff are left with no recourse as the Preliminary Proxy fails to account for this issue because it provides no provision for minority shareholder rights, specifically a majority of minority voting provision.

30.     Notably, the Preliminary Proxy Statement details that the Conflicts Committee of the Board of Directors was appointed to oversee the proposed transaction, however, the Preliminary Proxy Statement fails to detail the specific powers the board had in reviewing a potential transaction, including whether the committee could veto a transaction that was not in the best interest of shareholders.

31.     Significantly, the sales process lacked a market check prior to the signing of the deal. Instead, the Proposed Transaction relies upon the input of a "Go-shop" period in order to seek alternative offers. This provision makes the possibility of a superior offer unlikely, with the requirement of $4,200,000 termination fee in place in the event of the Company exiting the deal for a superior offer.

32.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Parent, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

34.     On May 25, 2022, StoneMor and Axar issued a joint press release announcing the

Proposed Transaction.  The press release stated, in relevant part:

> **BENSALEM, PA - May 25, 2022 - StoneMor Inc. (NYSE: STON) ("StoneMor" or the "Company"),** a leading owner and operator of cemeteries and funeral homes, today announced that it has entered into a definitive merger agreement under which a subsidiary of Axar Capital Management, LP ("Axar") will be merged with and into StoneMor and all outstanding shares of StoneMor common stock not owned by Axar as to which dissenters' rights are not perfected will be converted into the right to receive $3.50 in cash per share. Axar currently owns approximately 75% of the outstanding shares of StoneMor common stock. The cash consideration represents a 54.2% premium to the Company's closing share price on May 24, 2022, the last trading day prior to today's announcement of the execution of a definitive merger agreement.
>
> The agreement was entered into following receipt of a proposal by Axar on September 22, 2021 in which Axar expressed an interest in pursuing discussions concerning strategic alternatives that might be beneficial to the Company and its various stakeholders. The transaction was negotiated on behalf of StoneMor by the Conflicts Committee of its Board of Directors, which is comprised entirely of independent directors, with the assistance of independent financial and legal advisors. Following the Conflicts Committee's unanimous recommendation, StoneMor's Board of Directors approved the merger agreement and has recommended that StoneMor's stockholders adopt and approve the merger agreement and the merger.
>
> "Our agreement with Axar delivers a significant premium for StoneMor's stockholders and ensures a strong foundation for us to continue our expansion," said Joe Redling, President and Chief Executive Officer. "Our Board firmly believes that this transaction is in the best interests of all of our stockholders other than Axar and its affiliates and delivers an ongoing commitment to excellence for our customers, employees and communities we serve."
>
> The agreement provides for a "go-shop" period during which the Conflicts Committee (acting through its financial advisor) will actively initiate, solicit, facilitate, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that offer alternative acquisition proposals. The "go-shop" period is 60 days subsequent to signing of the Merger Agreement, ending July 23, 2022. There can be no assurance that this "go-shop" process will result in a superior proposal, particularly in light of Axar's ownership position and the fact that Axar has no obligation to support any such superior proposal. StoneMor does not intend to disclose developments with respect to the solicitation process unless and until its Conflicts Committee and the Board of Directors has

made a decision with respect to any potential superior proposal. The Company will pay Axar a termination fee in certain circumstances, including a fee equal to 2% of the aggregate value of the non-Axar shares if the Company terminates the agreement during the "go-shop" period to enter into a superior proposal that Axar supports, and a fee equal to 4% of the aggregate value of the non-Axar shares if the Company terminates the agreement after the "go-shop" period to enter into a superior proposal that Axar supports. No termination fee is payable if the Company terminates the agreement upon a change of recommendation in connection with a superior proposal that is not supported by Axar.

The merger is subject to approval by holders of a majority of the outstanding common stock of StoneMor and in addition, requires the approval by the holders of a majority of the outstanding common stock of StoneMor not owned by Axar or any of StoneMor's directors or executive officers or members of their immediate families. Axar has agreed to vote the shares of StoneMor common stock it owns in favor of the merger agreement. The merger agreement is also subject to customary closing conditions. Axar has fully committed financing and the transaction is not subject to a financing condition.

Subject to satisfaction of the conditions to closing, the transaction is currently expected to close in the fall of 2022. If the transaction is completed, StoneMor will become a privately held company and its stock will no longer trade on the New York Stock Exchange.

Duff & Phelps, now rebranded as Kroll, is serving as financial advisor and Faegre Drinker Biddle & Reath LLP is serving as legal counsel to the Conflicts Committee. Duff & Phelps Lokey is serving as financial advisor and Schulte Roth & Zabel LLP is serving as legal counsel to Axar. Duane Morris LLP is serving as legal counsel to the Company.

***Potential Conflicts of Interest***

35.     The breakdown of the benefits of the deal indicate that StoneMor insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of StoneMor.

36.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed

Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Name of Owner | Number of Shares of Common Stock (#) | Value of Common Stock ($) |
|---|---|---|
| Joseph M. Redling | 1,431,191 | 5,009,168.50 |
| Jeffrey DiGiovanni | 59,182 | 207,137.00 |
| Tom Connolly | 14,247 | 49,864.50 |
| Lindsay Granson | 132,792 | 464,772.00 |
| Sahel S. Laher | — | — |
| Robert Page | 8,190 | 28,665.00 |
| Austin K. So | 246,622 | 863,177.00 |
| Keith Trost | 8,939 | 31,286.50 |
| Andrew Axelrod | 88,633,045 | 310,215,657.50 |
| Spencer E. Goldenberg | 10,000 | 35,000.00 |
| David Miller | 941,432 | 3,295,012.00 |
| Stephen J. Negrotti | 48,634 | 170,219.00 |
| Kevin D. Patrick | — | — |
| Patricia D. Wellenbach | 6,064 | 21,224.00 |

37.    Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Preliminary Proxy Statement accounts for these awards as follows:

| Name | Number of Restricted Shares That Have Not Vested (#) | Value of Restricted Shares That Have Not Vested ($) | Number of Shares Underlying Phantom Units That Have Not Vested (#) | Value of Shares Underlying Phantom Units That Have Not Vested ($) | Number of Securities Underlying Unexercised Stock Options (#) | Exercise Price of Unexercised Stock Options ($) | Value of Unexercised Stock Options ($) |
|---|---|---|---|---|---|---|---|
| Joseph Redling | 208,334 | 729,169 | — | — | 2,500,000 | 1.20 | 5,750,000 |
|  | — | — | — | — | 312,500 | 1.71 | 559,375 |
| Jeffrey DiGiovanni | 37,667 | 131,834 | — | — | 450,000 | 1.20 | 1,035,000 |
|  | — | — | — | — | 56,500 | 1.71 | 101,135 |
| Tom Connolly | 37,667 | 131,834 | — | — | 450,000 | 1.20 | 1,035,000 |
|  | — | — | — | — | 56,500 | 1.71 | 101,135 |
| Lindsay Granson | 33,334 | 116,669 | — | — | 75,000 | 1.20 | 172,500 |
|  | — | — | — | — | 33,334 | 1.71 | 59,668 |
| Sahal S. Laher | — | — | — | — | 225,000 | 3.42 | 18,000 |
| Robert Page | — | — | — | — | — | — | — |
| Austin K. So | — | — | — | — | — | — | — |
| Keith Trost | 25,000 | 87,500 | — | — | 75,000 | 1.20 | 172,500 |
|  | — | — | — | — | 37,500 | 1.71 | 67,125 |
| Andrew Axelrod | — | — | 9,174 | 32,110 | — | — | — |
| Spencer E. Goldenberg | — | — | 63,088 | 220,806 | — | — | — |
| David Miller | — | — | 57,466 | 201,132 | — | — | — |
| Stephen J. Negrotti | — | — | 56,327 | 197,146 | — | — | — |
| Kevin D. Patrick | — | — | 16,370 | 57,296 | — | — | — |
| Patricia D. Wellenbach | — | — | 53,640 | 187,741 | — | — | — |

38.     In addition, certain employment agreements with certain Tenneco executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Named Executive Officer | Cash ($) | Equity ($) | Pension/ NQDC ($) | Perquisites/ Benefits ($) | Tax Reimbursement ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Joseph M. Redling | 1,050,000 | — | — | — | — | — | 1,050,000 |
| Jeffrey DiGiovanni | | — | — | — | — | — | |
| Austin K. So | — | — | — | — | — | — | — |

39.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of StoneMor, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

41.     On August 5, 2022, the StoneMor Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information

and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

_Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction_

42.    Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.    Adequate reasoning as to why no majority-of-the-minority vote was required, despite Parent and Company insiders collectively owning 77.4% of the outstanding shares;

b.    Adequate disclosure of the powers of the Conflicts committee in reviewing the Proposed Transaction, including whether the committee had the power to veto a transaction not in the best interests of shareholders;

c.    Adequate information as to why a market check was not conducted prior to the signing of the Proposed Transaction;

d.    Whether the confidentiality agreements entered into by the Company with Parent differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

e.    All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including The Consortium, would fall away; and

f.  Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning StoneMor's Financial Projections*

43.  The Preliminary Proxy Statement fails to provide material information concerning financial projections for StoneMor provided by StoneMor management to the Board and Duff & Phelps and relied upon by Duff & Phelps in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

44.  Notably the Preliminary Proxy Statement reveals that as part of its analyses, Duff & Phelps reviewed, "Other internal documents relating to the history, current operations and probable future outlook of the Company" prepared by Company management.

45.  The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that StoneMor management provided to the Board, Duff & Phelps, and Duff & Phelps. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

46.  With regard to the *Certain Unaudited Prospective Financial Information* prepared by StoneMor, the Preliminary Proxy Statement fails to disclose material line items, including the following:

a. A definition for EBITDA, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric;

b. A definition for EBIT, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric; and

c. The inputs, metrics, and assumptions underlying the change in net operating assets and liabilities from year 2022-2026.

47.    The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48.    This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.    Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Duff & Phelps' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.   As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Duff & Phelps*

50.    In the Preliminary Proxy Statement, Duff & Phelps describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51.      With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose:

    a.   The inputs, metrics, and assumptions used to determine a tax rate of 25.8%

    b.   The inputs, metrics, and assumptions used to determine a terminal growth rate of 3.0%;

    c.   (Increase) Decrease in Net Operating Assets and Liabilities, including all inputs, metrics, and assumptions used to determine this metric, including specifically: decreases or increases in current and long-term accounts receivable, prepaid expenses, merchandise trusts, deferred selling and obtaining costs, accounts payable, accrued liabilities, deferred revenues, and accrued interest;

    d.   The specific inputs and assumption used to determine discount rate of 3.50%;

    e.   The inputs, metrics, and assumptions used to determine a weighted average cost of capital range of 9.00% to 10.00%; and

    f.   The specific inputs and assumption used to determine implied weighted discount rate range of 8.90% to 9.85%.

52.      With respect to the *Selected Companies Analysis*, the Preliminary Proxy Statement fails to disclose:

    a.   The specific metrics for each company compared;

    b.   The EBITDA Growth rate range utilized as well as the specific inputs, metrics, and assumptions used to calculate the range for the last 12 months, year 2022P,

year 2023P, and year 2024P;

    c.   The EBITDA Margin rate range utilized as well as the specific inputs, metrics, and assumptions used to calculate the range for the last 12 months, year 2022P, year 2023P, and year 2024P;

    d.   The EV/LTM EBITDA range utilized as well as the specific inputs, metrics, and assumptions used to calculate the range;

    e.   The EV/2022P EBITDA range utilized as well as the specific inputs, metrics, and assumptions used to calculate the range;

    f.   The EV/2023P EBITDA range utilized as well as the specific inputs, metrics, and assumptions used to calculate the range;

    g.   The EV/2024P EBITDA range utilized as well as the specific inputs, metrics, and assumptions used to calculate the range;

    h.   The EV/LTM Revenue range utilized as well as the specific inputs, metrics, and assumptions used to calculate the range;

    i.   The EV/2022P Revenue range utilized as well as the specific inputs, metrics, and assumptions used to calculate the range;

    j.   The EV/2023P Revenue range utilized as well as the specific inputs, metrics, and assumptions used to calculate the range; and

    k.   The EV/2024P Revenue range utilized as well as the specific inputs, metrics, and assumptions used to calculate the range.

53.    With respect to the *Selected Mergers and Acquisitions Transactions Analysis*, the Preliminary Proxy Statement fails to disclose:

    a.   The specific metrics for each transaction compared;

    b.   The specific date on which each transaction closed;

    c.   The value of each transaction compared;

    d.   The inputs, metrics, and assumptions used to determine the selected multiple range of enterprise value to LTM EBITDA multiples ranging from 5.2x to 15.1x; and

    e.   The inputs, metrics, and assumptions used to determine the selected multiple range of enterprise value to LTM revenue multiples ranging from 0.75x to 5.27x.

54.    With respect to the *Valuation of Federal and State Net Operating Losses* analysis, the Preliminary Proxy Statement fails to disclose the Company's estimated levered cost of equity.

55.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public StoneMor stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

57.     Plaintiff repeats all previous allegations as if set forth in full herein.

58.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

60.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

64.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

65.     Plaintiff repeats all previous allegations as if set forth in full herein.

66.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations

and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

67. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

68. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of StoneMor's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

69.     The Individual Defendants acted as controlling persons of StoneMor within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause StoneMor to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled StoneMor and all of its employees.  As alleged above, StoneMor is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act and disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.


Dated: August 12, 2022                    **BRODSKY & SMITH, LLC**

                              By:  _/s/ Marc L. Ackerman_____
                                   Evan J. Smith
                                   Marc L. Ackerman
                                   Two Bala Plaza
                                   Suite 805
                                   Bala Cynwyd, PA 19004

                                   *Counsel for Plaintiff*